

U.S. Department of Justice

United States Attorney
Eastern District of New York

DGR:AP/AS
F. #2024R00229

271 Cadman Plaza East
Brooklyn, New York 11201

July 8, 2024

<u>By ECF and Email</u>

The Honorable Robert M. Levy
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: <u>United States v. Yue Zhou</u>
     <u>Criminal Docket No. 24-123 (MKB)</u>

Dear Judge Levy:

  The government respectfully submits this letter in support of pretrial detention of the defendant Yue Zhou, who has been charged by indictment with murder-for-hire, in violation of Title 18, United States Code, Section 1958, and who is scheduled to be arraigned today on the indictment and appear for a detention hearing. The defendant was arrested and presented in the Eastern District of Virginia and elected to have her detention hearing in this district. For the reasons set forth below, the defendant should be detained as a danger to the community and a flight risk.

I. <u>Factual Background</u>

 A. <u>The Instant Investigation</u>

  Between March 25, 2019, and April 4, 2019, the defendant, a resident of Flushing, Queens, sought to hire a hitman through a hitman-for-hire website on the dark web to kill Victim-1. At the time, the defendant was having an affair with Victim-1's spouse ("Victim-1's Spouse") and had become emotionally invested in the relationship, expressing a desire to get married and have children with Victim-1's Spouse. The defendant, using the username "BIGTREE," completed all steps to order the murder of Victim-1: The defendant (i) placed the order to have Victim-1 murdered, (ii) contracted with a Bitcoin exchange service in Ukraine to make a $5,000 Bitcoin payment to the hitman website, (iii) made a $5,000 cash payment to a middleman in Brooklyn so the Bitcoin payment would be made to the hitman website, (iv) confirmed the payment was sent to the hitman website, and (v) provided detailed descriptions of Victim-1, including her home, her work schedule, and the best times to target Victim-1, so that, among other things, Victim-1's Spouse would have an alibi for the murder.

Unknown to the defendant at the time was that the hitman-for-hire website was a scam run by a third party; there were no actual hitmen for hire.

However, believing the website was authentic, the defendant completed financial transactions necessary to further her murder-for-hire plot. Special agents with Homeland Security Investigations ("HSI") confirmed that a cryptocurrency transaction occurred related to the "BIGTREE" order. After making the payment, the defendant grew suspicious that the hitman website was a scam. As a result, the defendant sent several disturbing threats to the hitman website administrator, threatening physical and sexual violence against the administrator and his family.

A review of the messages between the defendant and the hitman website administrator shows that after the defendant made payment for the murder of Victim-1, and while she still believed the website was authentic, the defendant sought to add a second victim—an adult daughter of Victim-1's Spouse from an earlier marriage ("Victim-2"). The defendant also contacted Victim-2 directly in December 2019 with threatening messages: "warning: I will cut your body into hundred pieces if you guys still don't take responsibilities. [sic] I know where you live. I watch you all time."

Later in February 2021, the defendant also sent a text message to a neighbor of Victim-2 to try to hire that neighbor to kill Victim-2, offering $10,000 and sex to kill Victim-2 and throw her body in a lake. Based on cellular location information, on or about January 2, 2021, the cellular device that contacted Victim-2's neighbor was subsequently located in Cheyenne, Wyoming in close physical proximity to a location the defendant was using at that time.[1]

B.   The Defendant's Connections to Illicit Sex Work & Other Threats

For the past several years, the defendant has worked for short periods of time at multiple spas around the country that are connected to illicit sex work, including a spa in Cheyenne, Wyoming. The Cheyenne spa was the subject of a raid by local law enforcement for prostitution-related offenses. Information obtained in the course of the investigation shows that the defendant worked at the Cheyenne spa in 2020 and 2021. Most recently, on or about June 5, 2024, the defendant was arrested at a spa in Virginia pursuant to the arrest warrant issued with her indictment in this matter. Prior to that arrest, at multiple times in 2024, the defendant worked at a spa in Maryland that, based on information from local law enforcement, is also connected to illicit sex work.

II.   Legal Standard

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e). While a finding of dangerousness must be supported by clear and convincing evidence, United States v.

---

[1] As discussed below, the defendant traveled to Cheyenne, Wyoming for a time in 2020 and 2021.

Ferranti, 66 F.3d 540, 542 (2d Cir. 1995), risk of flight can be proven by a preponderance of the evidence, United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

Four factors guide the Court's determination of whether each of the Defendants should be released on bail: (i) the nature and circumstances of the crimes charged; (ii) the "weight of the evidence against" the defendant; (iii) the "history and characteristics" of the defendant; and (iv) the seriousness of the danger posed by the defendant's release. 18 U.S.C. § 3142(g).

Evidentiary rules do not apply at detention hearings and the government is entitled to present evidence by way of proffer, among other means. See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000). In the pre-trial context, few detention hearings involve live testimony or cross-examination. Most proceed on proffer. Id. at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." Id. (internal quotation marks omitted); see also Mercedes, 254 F.3d at 437 ("[The defendant] has twice been convicted of weapon possession—one felony conviction, and one misdemeanor conviction. We find the district court committed clear error in failing to credit the government's proffer with respect to [the defendant's] dangerousness.").

III. Argument

The defendant poses a danger to the community and a substantial risk of nonappearance. The defendant is a danger based on her efforts to hire a hitman to murder Victim-1 so that she could pursue Victim-1's Spouse, followed by her attempts to seek to murder Victim-2, the adult daughter of Victim-1's Spouse. In both instances, the defendant appears to have stalked both Victim-1 and Victim-2 to learn their schedules, and her messages to the hitman website administrator and Victim-2 support that.

The defendant is also a serious flight risk given that the defendant is a citizen of China, does not have permanent legal status in the United States, and now faces a considerable sentence of imprisonment if convicted.

A. Nature and Circumstances of the Crime Charged

The nature and circumstances of the charged crime are serious, with the defendant indicted for ordering the murder of Victim-1 on a hitman-for-hire website. The defendant concocted a scheme to obscure both her identity by using the dark web as well as her connection to the transaction by using a Bitcoin exchange service based in Ukraine in order to hire someone to murder Victim-1. In addition, although the indictment charges the defendant with murder-for-hire as to Victim-1, it is relevant that the defendant also sought to have Victim-2 murdered, both in the messages directing the hitman website to murder Victim-1, as well as in separate, direct communications to Victim-2's neighbor.

B. The Weight of the Evidence

The evidence against the defendant is very strong and includes, among other things, messages to the hitman-for-hire website, text message correspondence, cell site data, IP address information, witness testimony with an identification of the defendant, and

3

cryptocurrency tracing analysis and transaction detail.

### C. The Defendants' History and Characteristics

Although the defendant has no prior documented criminal history in the United States, her involvement in a depraved plot to kill Victim-1 speaks volumes as to her characteristics, as does her later targeting of Victim-2, the adult daughter of Victim-1's Spouse. The defendant text messaged Victim-2 directly approximately nine months after the defendant sought out the original contract on Victim-1's life, and then nearly 14 months after that, the defendant contacted Victim-2's neighbor offering money and sex if the neighbor would kill Victim-2 and "[t]hrow her body into the lake. I really don't want to see her again."

Moreover, the defendant does not have permanent legal status in this country, and on conviction, she would be facing removal from the United States. Not only that, but also the defendant is facing a significant prison sentence, even at Criminal History Category I, with an estimated Guidelines range of 121-151 months for her murder-for-hire. The possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight. See United States v. Scali, 738 F. App'x 32, 33 (2d Cir. 2018) ("The court reasonably determined that [the defendant]'s Guidelines range of 87-108 months' imprisonment was significant enough to provide an incentive to flee.").

### D. Danger Posed by the Defendant's Release

Based on her concerted and painstaking efforts to kill numerous people, the defendant would a clear danger to the community if released. The defendant's modus operandi has shown that she threatens and targets individuals, irrespective of their role in the community, and there is no reason to believe that the defendant would not resort to threats and possible action against potential witnesses, victims, and others who have cooperated with the government in their investigation.

## IV. Conclusion

For these reasons, the government respectfully requests that the Court enter an order of detention for the defendant.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/ Amanda Shami
Andres Palacio
Amanda Shami
Assistant United States Attorneys
(718) 254-6215/7528

cc:   Clerk of Court (MKB)